ORAL ARGUMENT HELD JULY 7, 2025
Nos. 25-5097, 25-5098 (consol.)

# In the United States Court of Appeals for the District of Columbia Circuit

GLOBAL HEALTH COUNCIL, *et al.*,
*Plaintiffs-Appellees*,

*v.*

DONALD J. TRUMP, *et al.*,
*Defendants-Appellants*.

AIDS VACCINE ADVOCACY COALITION, *et al.*,
*Plaintiffs-Appellees*,

*v.*

DEPARTMENT OF STATE, *et al.*,
*Defendants-Appellants*.

On Appeal from the United States District Court for the District of Columbia

## EMERGENCY MOTION FOR STAY PENDING REHEARING EN BANC

Lauren E. Bateman
Nicolas A. Sansone
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for AIDS Vaccine
Advocacy Coalition, et al.*

Daniel F. Jacobson
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(301) 823-1148

William C. Perdue
Sally L. Pei
Stephen K. Wirth
Samuel F. Callahan
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000

*Counsel for Global Health Council,
et al.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ..................................................................................... 1

BACKGROUND ....................................................................................... 4

ARGUMENT ............................................................................................ 6

I.  Plaintiffs Are Likely to Prevail on the Merits ................................... 7

    A.  Plaintiffs Are Likely to Prevail on Their Separation of Powers
       Claims ........................................................................................ 7

    B.  Plaintiffs Can Bring APA Claims for Violations of the 2024
       Appropriations Act .................................................................... 13

    C.  Plaintiffs Can Succeed on *Ultra Vires* Claims ...................... 17

II.  The Equitable Factors Favor a Stay .............................................. 21

    A.  Absent a Stay, the Funds Will Expire Unobligated and
       Plaintiffs Will Suffer Irreparable Harm ................................. 21

    B.  The Balance of the Harms and Public Interest Favor Plaintiffs ........ 23

CONCLUSION ....................................................................................... 24

CERTIFICATE OF COMPLIANCE ...................................................... 25

CERTIFICATE OF SERVICE ............................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                   Page(s)

*Am. Clinical Lab. Ass'n v. Azar*,
  931 F.3d 1195 (D.C. Cir. 2019) ................................................................15

*Borden v. United States*,
  593 U.S. 420 (2021) ................................................................................17

*Chamber of Commerce v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996) ................................................................19

*City of New York v. Ruckelshaus*,
  358 F. Supp. 669 (D.D.C. 1973) .......................................................16, 17

*Coal. of MISO Transmission Customers v. FERC*,
  45 F.4th 1004 (D.C. Cir. 2022) .............................................................22

*Collins v. Yellen*,
  594 U.S. 220 (2021) ................................................................................12

*Dalton v. Specter*,
  511 U.S. 462 (1994) ........................................................................7, 9, 13

*Federal Express v. United States Dep't of Commerce*,
  39 F.4th 756 (D.C. Cir. 2022) ...............................................................20

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ................................................................................12

*Gen. Land Off. v. Biden*,
  722 F. Supp. 3d 710 (S.D. Tex. 2024) ...................................................15

*Guadamuz v. Ash*,
  368 F. Supp. 1233 (D.D.C. 1973) ..........................................................17

*In re Aiken County*,
  725 F.3d 255 (D.C. Cir. 2013) ...................................................11, 12, 18

*Int'l Ladies' Garment Workers' Union v. Donovan*,
  722 F.2d 795 (D.C. Cir. 1983) ...............................................................14

*Kendall v. United States ex rel. Stokes,*
  37 U.S. (12 Pet.) 524 (1838) .......................................................................11, 12

*Koretoff v. Vilsack,*
  614 F.3d 532 (D.C. Cir. 2010)........................................................................14

*League of Women Voters of U.S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016).............................................................................24

*Louisiana. v. Weinberger,*
  369 F. Supp. 856 (E.D. La. 1973)....................................................................17

*McBride v. Merrell Dow & Pharms.,*
  800 F.2d 1208 (D.C. Cir. 1986).........................................................................8

*Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch,*
  322 F.2d 993 (D.C. Cir. 1963).........................................................................20

*Murphy Co. v. Biden,*
  65 F.4th 1122 (9th Cir. 2023) ...........................................................................8

*Nat'l Ass'n of Postal Supervisors v. USPS,*
  26 F.4th 960 (D.C. Cir. 2022) .........................................................................19

*Nat'l Council of Cmty. Mental Health Ctrs. v. Weinberger,*
  361 F. Supp. 897 (D.D.C. 1973) ......................................................................17

*Nken v. Holder,*
  556 U.S. 418, 426 (2009)....................................................................................6

*Changji Esquel Textile Co. v. Raimondo,*
  40 F.4th 716 (D.C. Cir. 2022) .........................................................................18

*Railway Labor Execs.' Ass'n v. Nat'l Mediation Bd.,*
  29 F.3d 655 (D.C. Cir. 1994)...........................................................................20

*State Highway Comm'n v. Volpe,*
  479 F.2d 1099 (8th Cir. 1973) .........................................................................17

*Train v. City of New York,*
  420 U.S. 35 (1975)............................................................................................16

iii

*Trump v. Thompson,*
   20 F.4th 10 (D.C. Cir. 2021) ............................................................8

*Youngstown Sheet & Tube Co. v. Sawyer,*
   343 U.S. 579 (1952) .................................................................5, 9

**Statutes**

Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138
   Stat. 460
      Div. F, tits. II–III, 138 Stat. 739–43 ......................................4
      §§ 7019, 7030–61, 138 Stat. 771–72, 780–841 ...........................4, 19

2 U.S.C.
   § 681(3) ..................................................................................15
   § 687 .......................................................................................15

5 U.S.C. § 702 ................................................................................16

42 U.S.C. § 10139 .........................................................................12

**Regulations & Executive Orders**

2 C.F.R. § 200.201–211 ..................................................................21

4 C.F.R.
   § 21.1(a) .................................................................................21
   § 21.6 .....................................................................................21

48 C.F.R.
   § 5.003 ...................................................................................21
   § 5.203 ...................................................................................21

Exec. Order No. 14,169 (Jan. 20, 2025) ..........................................4, 9

# INTRODUCTION

Plaintiffs respectfully move the en banc Court for an emergency stay (or administrative stay) of the panel opinion and judgment pending en banc review. This appeal concerns tens of billions of dollars that Congress directed the United States Agency for International Development (USAID) and the State Department to spend for foreign assistance purposes. Defendants acknowledge that they are currently enjoined, by order of the district court dating back to March 10, 2025, to "make available for obligation the full amount of funds that Congress appropriated for foreign assistance programs in the Further Consolidated Appropriations Act of 2024." JA48. Nevertheless, Defendants have taken no steps to obligate those funds to date, and they have repeatedly contended that unless they start the process to obligate those funds by *today*, August 15, 2025, then more than $15 billion of these funds will expire on September 30, 2025.

Two days ago, a panel of this Court issued a decision that departs from controlling Supreme Court and Circuit precedent to hold that parties may not bring separation of powers claims that derive from the Executive Branch's refusal to carry out statutory mandates; that parties may not bring an Administrative Procedure Act (APA) claim to challenge the Executive

1

Branch's violation of an appropriations statute; and that the Executive Branch's refusal to spend congressionally appropriated funds cannot be the basis of an *ultra vires* claim either. If allowed to stand, the combined result of these holdings is that private plaintiffs cannot challenge almost any Executive Branch refusal to spend appropriated funds. No previous court has ever hinted at such a proposition, which conflicts with myriad precedents and bedrock constitutional and administrative law principles. Plaintiffs are concurrently filing a petition for en banc rehearing, which (for the reasons stated in the petition) the en banc Court is likely to grant to reverse the panel's unprecedented erosion of the separation of powers.

The panel has stayed issuance of its mandate until after resolution of an en banc petition—and thus the district court's preliminary injunction remains in effect. But Defendants have refused to confirm to Plaintiffs that they will comply with the injunction and begin taking the steps that they have repeatedly asserted they must begin *today* in order to ensure that the funds at issue can be obligated before their expiration on September 30.[1] Plaintiffs

---

[1] Defendants have indicated that they intend to seek a stay of the district court's preliminary injunction pending issuance of the mandate. In response to Defendants' request for Plaintiffs' position on that forthcoming motion, Plaintiffs asked Defendants to confirm that they will comply with the injunction and begin the process of obligating funds now, unless and until the

therefore require urgent action by the en banc Court to stay the panel's judgment and opinion pending disposition of the en banc petition.

Absent an emergency stay, there is a substantial likelihood that Defendants will succeed in permanently and unlawfully impounding tens of billions of dollars, even if the en banc Court ultimately vacates the panel opinion, because, according to the government, it will be too late to obligate most of the funds before they expire. As a direct result, according to USAID's own estimates, millions of people globally will die and suffer from debilitating illness, 11 million newborns will not receive critical postnatal care, and one million children will not be treated for severe acute malnutrition. JA77, JA216–220. Emergency relief is necessary to preserve the status quo and ensure that the government's permanent unlawful impoundment of congressionally appropriated funds does not become a *fait accompli* pending the full Court's review.

---

preliminary injunction is stayed or this Court issues its mandate. Defendants declined to provide the requested confirmation. To Plaintiffs' knowledge, Defendants have made no efforts whatsoever to comply with the district court's preliminary injunction on impoundments to date, and they have given no indication that they will start the process of obligating funds now, while the panel's opinion remains in place.

## BACKGROUND

In the Further Consolidated Appropriations Act of 2024 (the "2024 Appropriations Act"), Congress appropriated roughly $30 billion for foreign assistance purposes, including global health programs, development assistance, disaster relief, and democracy promotion. *See* Pub. L. No. 118-47, div. F, tits. II–III, 138 Stat. 460, 739–43. More than half of those appropriations expire on September 30, 2025. Congress did not afford Defendants discretion to spend less than the full sums appropriated, and Congress even specified subcategories of purposes for which precise amounts—or "not less than" specific amounts—"shall be made available" by Defendants. *Id.* §§ 7019, 7030–61, 138 Stat. 771–72, 780–841. On his first day in office, the President asserted his authority "under the Constitution and the laws of the United States of America" to issue an executive order purporting to immediately freeze all foreign assistance funding and providing that "no further United States foreign assistance shall be disbursed in a manner that is not fully aligned with the foreign policy of the President." Exec. Order No. 14,169 (Jan. 20, 2025). Plaintiffs—a broad group of corporations and non-profits that span the full-spectrum of foreign aid work, many of whom depend almost entirely on USAID or State Department grants and contracts for their

business—subsequently filed suit. In relevant part, they raised a constitutional claim that Defendants' refusal to spend the appropriations violated the separation of powers, and (separately) an APA claim that Defendants' actions violated the 2024 Appropriations Act, as well as a claim that Defendants' actions were *ultra vires*.

On March 10, the district court issued a preliminary injunction that, in relevant part, required Defendants to obligate the foreign assistance funds that Congress appropriated. Relevant here, the court found that Defendants' impoundment of funds violated the separation of powers. Based solely on that constitutional holding, the court enjoined Defendants to spend the appropriations before they expire. The only substantive merits defense that the government raised against this claim was a constitutional one—that the President had "'vast and generally unreviewable' powers in the realm of foreign affairs." JA67. The court rejected that argument, applying the framework of *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring). JA69.

Three weeks after the district court issued its injunction, Defendants appealed to this Court. Defendants never sought to stay the injunction, whether in this Court or the district court. The injunction has now been in

place, undisturbed, for over five months. Yet in the weekly status reports they have filed in the district court, Defendants have not identified a single step they have taken to comply with the injunction or to spend the tens of billions of funds that will expire on September 30. *See, e.g.*, No. 1:25-cv-00402, ECF No. 93 at 2 (June 12 status report). Instead, Defendants maintained in this Court and below that they will be able to obligate all of the funds before they expire if they begin those efforts by today, August 15. Mot. to Expedite Appeal at 3; Opp. to Mot. to Enforce the Prelim. Injunction, No. 1:25-cv-00402, ECF No. 99 at 14; Decl. of Jeremy Lewin, ECF No. 99-1 ¶¶ 8, 17.

On August 13, a panel of this Court issued an order vacating the part of the district court's preliminary injunction requiring the obligation of funds. Judge Pan dissented. Simultaneously with the filing of this emergency motion, Plaintiffs are petitioning for rehearing en banc.

## ARGUMENT

Even though the preliminary injunction remains in effect, Defendants have indicated that they will not take any steps to obligate foreign-assistance funds that expire on September 30 as long as the panel's decision is undisturbed. An immediate stay of the effect of the panel's opinion and judgment is therefore necessary.

6

Each of the stay factors overwhelmingly favors a stay of the panel's opinion. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

## I.     Plaintiffs Are Likely to Prevail on the Merits

Plaintiffs' petition for rehearing en banc demonstrates why this appeal must be reheard en banc. If the Court grants rehearing, Plaintiffs will succeed on the merits.

The panel issued three holdings: (1) Plaintiffs lack a cause of action to bring their separation of powers claim; (2) Plaintiffs cannot bring APA claims to challenge violations of the appropriations acts (in this case, the 2024 Appropriations Act); and (3) Plaintiffs cannot succeed on their *ultra vires* claim. All three holdings overrode "rule[s] of party presentation." Dissent 25. The second and third issues were not raised or briefed by the parties, and Defendants did not raise the first at all in their opening brief. All three conflict with binding precedent and invite Executive Branch defiance of congressional mandates.

## A.     Plaintiffs Are Likely to Prevail on Their Separation of Powers Claims

The panel's disposition of Plaintiffs' constitutional claim, including whether Plaintiffs possess a cause of action to bring that claim, should have been "easy." Dissent 2. The government did not make *any argument* in their

opening brief about whether Plaintiffs could bring their constitutional claims—it did not even cite *Dalton v. Specter*, 511 U.S. 462 (1994), which formed the basis of the panel majority's reasoning on this issue. The government did not raise this argument even though the district court's injunction was based on Plaintiffs' separation of powers claim and the court below rejected Defendants' *Dalton* argument. JA71 n.17. This Court consistently finds issues forfeited when not raised in an opening brief, no matter the issue or the defendant's identity. *See, e.g.*, *Trump v. Thompson*, 20 F.4th 10, 45 (D.C. Cir. 2021).

The panel majority itself found "[the government's] oversight hard to understand." Op. 16. Nonetheless, the panel majority overlooked this obvious forfeiture and announced a "new and sweeping constitutional rule in the President's favor," Dissent 20, holding that parties cannot bring a separation of powers claim that is based on the Executive Branch's violation of statutory mandates, Op. 16–24. This is a paradigmatic case where "[c]onsidering an argument advanced for the first time in a reply brief … is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." *McBride v. Merrell Dow & Pharms.*, 800 F.2d 1208, 1210–11 (D.C. Cir. 1986) (citation omitted). Indeed, the panel even

8

acknowledged that its new rule "creates a split with the Ninth Circuit." Op. 24

n.15 (citing *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023)).

Forfeiture aside, the panel's holding on *Dalton* is also incorrect. The

government admitted (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343

U.S. 579 (1952)) that *Dalton* has no bearing where "executive officers rely on

[the Constitution] as an independent source of authority to act." Reply Br. at

16. And here, executive officers *did* rely on the Constitution as an independent

source of authority to act. The President asserted his authority under "the

Constitution" to issue the Executive Order precluding the spending of foreign

assistance funding "not fully aligned with the foreign policy of the President."

Exec. Order No. 14,169 (Jan. 20, 2025). The acting deputy of USAID then

confirmed in a declaration in this case that the President relied only upon his

constitutional authority, asserting that "President Trump exercised his

constitutional authority to conduct foreign policy to issue [the] executive

order." Dec. of Pete Marocco, No. 1:25-cv-00402, ECF 25-1, ¶ 3.

Consistent with these statements, Defendants never asserted any

statutory defense to justify the impoundment of foreign assistance funds.

Their only substantive defense to the impoundment claim was constitutional—

based on the President's purported "'vast and generally unreviewable' foreign

9

affairs powers." JA36. In these circumstances, there was no need for the panel to address the more general question of whether *Dalton* precludes constitutional claims based on statutory violations, because Plaintiffs' constitutional claim asserts that the President acted *in the absence* of any statutory authority. It thus falls under the *Youngstown* rubric that the government agrees makes *Dalton* inapplicable.

The panel majority looked past this fact because, "[o]n appeal, the government disclaims any constitutional defense" and instead invoked a new (and baseless) statutory argument. Op. 20. But Defendants' new position "on appeal" cannot be relevant to whether Plaintiffs have stated a "cause of action." Under the majority's logic, Plaintiffs had a constitutional cause of action when filing suit, maintained that cause of action through the district court proceedings, and then lost that cause of action when Defendants switched litigation strategies on appeal. That holding cannot be correct and cannot survive en banc review.

*Youngstown* aside, the panel majority's understanding of *Dalton* breaks sharply with this Circuit's precedent, which has properly understood *Dalton* to permit constitutional claims based on violations of statutory mandates under certain circumstances. Most significantly, this Court in *Aiken County*

10

held that an agency's refusal to comply with "statutory mandates" altogether *can* give rise to a separation of powers violation. *In re Aiken County*, 725 F.3d 255, 258 (D.C. Cir. 2013) (Kavanaugh, J.). This Court ordered the Nuclear Regulatory Commission to proceed with a licensing process because the agency had refused to "comply with the law as it has been set by Congress" and thus violated "bedrock principles of constitutional law." *Id.* 257, 259. One of the laws violated was an appropriations statute: the Commission lacked constitutional "authority to refuse to spend the funds" appropriated for the process, and it still had $11.1 million to spend. *Id.* at 258–59, 261 n.1. The Court's holding was unmistakably constitutional: the Court's "decision … rest[ed] on the constitutional authority of Congress, and the respect that the Executive and the Judiciary properly owe to Congress." *Id.* at 267. *Aiken County* thus holds that where, as here, agencies refuse to carry out non-discretionary statutory mandates, they violate the separation of powers.

The Supreme Court reached a similar conclusion 175 years earlier in *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524 (1838), where it rejected the Postmaster General's efforts to "refuse and neglect" compliance with a statute directing him to settle and pay certain claims, and recognized

11

this noncompliance as a *constitutional* violation. *Id.* at 612–13. The injunction in this case rested on these same constitutional principles. *See* Dissent 31–34.

The panel ignored the constitutional holdings of *Aiken* and *Kendall*, reasoning that they were distinguishable because they "involved a writ of mandamus" and not "a constitutional cause of action." Op. 22. Yet the panel did not "explain why those distinctions should make any difference." Dissent 30 n.5. The key point is that the legal violations in both cases were constitutional in nature. The Supreme Court has made clear that parties possess a freestanding cause of action to enjoin constitutional violations, and that there is "no reason and … no authority" supporting the proposition that a "separation of powers claim should be treated differently." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010); *see also Collins v. Yellen*, 594 U.S. 220, 245 (2021) ("whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge").[2]

---

[2] The petitioners in *Aiken* sought mandamus because that was the sole avenue for immediate injunctive relief. The relevant statute gave this Court "*original* and exclusive jurisdiction over any civil action." 42 U.S.C. § 10139 (emphasis added); *see* Pet. for Writ of Mandamus at 3, *Aiken*, 725 F.3d 255 (No. 11-1271).

The fact that *Aiken*'s violation was so clear as to warrant the "extraordinary remedy" of mandamus, *Aiken*, 725 F.3d at 258, only reinforces the propriety of relief in this case. Here too, Defendants are defying non-discretionary statutory language requiring them to spend appropriated foreign-assistance funds. *Aiken* held that such defiance was unconstitutional, and there is no way to square that holding with the panel's notion that the defiance of statutes cannot establish independently actionable separation of powers claims. *See* Dissent 32–34.

Indeed, the panel's conception of *Dalton* "paves the way for future illegal conduct." Dissent 47. Under the panel's new exception to constitutional review, *Dalton* would foreclose a constitutional challenge for "sweeping executive action"—for example, if "the President announced that he would stop enforcing all statutes." Dissent 36 n.7. The panel's holding would foreclose any challenge—constitutional or statutory—if the President announced that he would not comply with all appropriations statutes, since the panel held that no private party can challenge the violation of an appropriations law. *See infra*.

## B.     Plaintiffs Can Bring APA Claims for Violations of the 2024 Appropriations Act

Having dispensed with Plaintiffs' constitutional claim, which was the only basis for the district court's injunction, the panel majority next held that

13

private litigants also cannot bring an APA claim to challenge violations of an appropriations act—even though that issue was neither presented nor briefed on appeal.[3] Indeed, the panel reached out to decide this issue notwithstanding the fact that the district court expressly disclaimed that its holding rested on the APA, *see* JA63, JA67, n.15, JA70, n.17, and that Defendants never argued below that Plaintiffs lacked an APA cause of action to challenge violations of the 2024 Appropriations Act (thereby waiving the issue). The panel's sua sponte holding may have far-reaching and dramatic consequences: it stands to bar private litigants from bringing an APA claim to challenge *any* agency violation of an appropriations law.

That holding is erroneous for several reasons. First, the APA carries "a strong presumption of reviewability that can be rebutted only by a clear showing that judicial review would be inappropriate." *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 807 (D.C. Cir. 1983) (quotations omitted). "The usual rule of administrative law is that an aggrieved party can sue to challenge agency action regardless of whether there might be some other aggrieved party who might raise the same challenge or seek the same

---

[3] Defendants' opening brief questioned whether Plaintiffs had an APA cause of action to challenge violations of *the Impoundment Control Act*, not the 2024 Appropriations Act standing alone. Appellant Br. 27–35.

14

relief." *Koretoff v. Vilsack*, 614 F.3d 532, 539 (D.C. Cir. 2010) (Kavanaugh, J.). Thus, "[w]hen a statute is reasonably susceptible to divergent interpretation, [courts] adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Am. Clinical Lab. Ass'n v. Azar*, 931 F.3d 1195, 1204 (D.C. Cir. 2019) (quotations omitted).

The panel majority, however, strained to reach the opposite conclusion. It held that the Impoundment Control Act (ICA) precludes private plaintiffs not only from bringing claims for ICA violations, but also from bringing an APA challenge to "enforc[e]" entirely different laws—the relevant appropriations acts. Op. 25. But the ICA only empowers the Comptroller General to sue over violations of the ICA, not an appropriations act. 2 U.S.C. § 687. There is nothing in the ICA's text expressing any intent to preclude APA challenges to any statutory violations, let alone violations of separate appropriations acts. *Cf. Gen. Land Off. v. Biden*, 722 F. Supp. 3d 710 (S.D. Tex. 2024) (holding that plaintiffs could not challenge ICA violations under the APA, but could bring APA claims for violations of the appropriations act).

To the contrary, the ICA explicitly states: "Nothing contained in this Act … shall be construed as … affecting in any way the claims or defenses of

any party to litigation concerning any impoundment." 2 U.S.C. § 681(3). The panel held that this provision applied only to "then-pending" cases. Op. 28. But the text of the law says no such thing. The ICA does not affect the claims of "any party to litigation," *id.*, and thus cannot affect the right of any "adversely affected or aggrieved" party to bring APA claims for an agency's violation of a statute. 5 U.S.C. § 702.

The panel's holding in fact contravenes Supreme Court precedent upholding the ability of private parties to bring APA claims for violations of a statutory duty to spend funds. In *Train v. City of New York*, 420 U.S. 35, 40 (1975), private plaintiffs brought an APA claim challenging an agency's refusal to spend the full sums that Congress directed be spent under a statute. *See City of New York v. Ruckelshaus*, 358 F. Supp. 669, 673 (D.D.C. 1973) (noting that the plaintiffs brought an APA claim). The Supreme Court affirmed the district court injunction finding a statutory violation and compelling the expenditure of the funds. Yet, under the panel's holding, *Train* would have come out the other way had it been filed the day after the ICA was enacted, solely because Congress had passed a law intended to *stop* unauthorized impoundments.

16

That outcome would make no sense and is impossible to reconcile with historical practice. Prior to the ICA, private litigants won a series of cases challenging President Nixon's impoundments. *See, e.g.*, *Guadamuz v. Ash*, 368 F. Supp. 1233 (D.D.C. 1973); *Louisiana. v. Weinberger*, 369 F. Supp. 856 (E.D. La. 1973); *Nat'l Council of Cmty. Mental Health Ctrs. v. Weinberger*, 361 F. Supp. 897 (D.D.C. 1973); *State Highway Comm'n v. Volpe*, 479 F.2d 1099 (8th Cir. 1973); *Ruckelshaus*, 358 F. Supp. 669. The ICA was enacted to *prevent* the President from impounding funds. The panel's holding turns the ICA on its head, transforming it into a law that *facilitates* impoundments by stripping parties of their previously established right to challenge them. This Court "should not lightly conclude that Congress enacted a self-defeating statute." *Borden v. United States*, 593 U.S. 420, 460 (2021) (quotations omitted).

## C.    Plaintiffs Can Succeed on *Ultra Vires* Claims

The panel majority also held that Plaintiffs cannot bring an *ultra vires* claim. Op. 29. It did so even though the parties did not brief the substance of this claim at all on appeal. The government did not address the *ultra vires* claim at all in its opening brief, and its reply included only a cryptic suggestion that Plaintiffs had "disclaimed" it as an alternative ground for affirmance. Reply Br. 3.

17

The panel majority disregarded this fact, Op. 15–16 n.6, and nevertheless held that Plaintiffs' *ultra vires* claim "fails as well," Op. 30. The panel majority held that Plaintiffs could not satisfy the "the third prong of the *ultra vires* reviewability test," which is that "the challenged action is 'plainly' in 'excess of [the agency's] delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory.'" Op. 30 (quoting *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (brackets in original)). According to the panel majority, Plaintiffs could not satisfy this factor because "[t]he ICA provides that the Executive may carry out lawful impoundments subject to certain restrictions and [Plaintiffs] can point to no specific prohibition that the defendants have violated to an extreme and nearly jurisdictional degree." Op. 30.[4]

The panel majority was incorrect on multiple levels. As an initial matter, the 2024 Appropriations Act imposes "clear and mandatory" requirements on Defendants. *See* Appellees' Br. 33–44. Unless Congress specifies otherwise by using discretionary language, the Executive Branch must spend "the full amount appropriated by Congress for a particular project or program." *Aiken*

---

[4] The panel did not hold, nor have Defendants ever argued, that Plaintiffs could not satisfy the first and second prongs of the *ultra vires* test.

*Cnty.*, 725 F.3d at 261 n.1. And the relevant appropriations laws here use especially clear mandatory language, directing that the foreign assistance funds appropriated by the Act "shall be made available" in amounts "not less than" specific levels, or in amounts "specifically designated" by certain tables. 2024 Appropriations Act §§ 7019(a), 7030–61, 138 Stat. at 772, 781–842. The ICA creates procedures for the President to follow if he wishes not to spend all funds appropriated in the 2024 Appropriations Act before they expire. The theoretical possibility that the President could invoke the procedures, which he has not done for any of the relevant funds, does not excuse the agencies' violations of their duties under the 2024 Appropriations Act.

The panel further erred in holding that *ultra vires* claims may be brought only based on violations of a "statutory prohibition," rather than a mandate. The principle underlying *ultra vires* relief is that courts "presume that Congress intends the executive to obey its statutory commands and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command." *Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996). This Court's precedents make clear that *ultra vires* review is not restricted to cases where the Executive has violated a negative statutory prohibition. As the Court observed, "the case law … confirms that the 'clear

19

and mandatory' standard … subsumes review of claims involving 'positive statutory commands ….'" *Nat'l Ass'n of Postal Supervisors*, 26 F.4th at 971. That makes sense. Congress uses both "negatively worded" prohibitions and affirmative "requirement[s]" to delineate the bounds of executive authority. *Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch*, 322 F.2d 993, 998 (D.C. Cir. 1963). An agency that refuses to adhere to a "specific affirmative command" exceeds its authority and defies Congress's will just as much as an agency that violates a " 'shall not' statutory command." *Railway Labor Execs.' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 662 (D.C. Cir. 1994).

Here, by refusing to carry out Congress's specific, clear, and mandatory commands to spend appropriated funds, Defendants have gone far beyond "mere legal or factual error," and have "plainly and openly crossed a congressionally drawn line in the sand." *Federal Express v. United States Dep't of Commerce*, 39 F.4th 756, 765 (D.C. Cir. 2022). *Ultra vires* review exists for the precise purpose of challenging such "blatantly lawless agency action." *Id.* If the Court grants en banc review, it is thus likely to reverse the panel's holding on the *ultra vires* claim.

## II.     The Equitable Factors Favor a Stay

### A.     Absent a Stay, the Funds Will Expire Unobligated and Plaintiffs Will Suffer Irreparable Harm

Plaintiffs will be irreparably harmed absent an immediate stay of the panel's judgment and opinion. The government sought an expedited appeal in this case because, as it represented to this Court at oral argument, "August 15 is really the day when they need to start the process … to get the funds out the door by September 30." Oral Argument at 1:08:52, *Glob. Health Council v. Trump*, No. 25-5097 (D.C. Cir. July 7, 2025). Defendants have asserted the same below repeatedly. *E.g.*, No. 25-cv-402, ECF 108, at 5; ECF 99, at 14–15. Yet, while Defendants acknowledge that the preliminary injunction remains in effect pending this Court's issuance of the mandate, they have declined to confirm that they will immediately begin taking the steps necessary to ensure that funds can be obligated. *See supra*, footnote 1. Thus, without prompt action from the en banc Court, any further review of the panel's decision will be meaningless—the funds will irretrievably lapse.

As a practical matter, absent an immediate stay, it will become impossible for Defendants to obligate the full amount of the tens of billions of dollars that remain available before they expire. The obligation of funds through contracts and grants is a multistep process governed by regulatory

21

requirements that mandate procedures for posting funding opportunities, soliciting applications, and reviewing and awarding the contracts or grants. *See* 2 C.F.R. § 200.201–211; 48 C.F.R. § 5.203, § 5.003; 4 C.F.R. §§ 21.1(a), 21.6. USAID's average timeframe for issuing grants and contracts is months, not weeks. *See* No. 1:25-cv-00402, ECF No. 97-4 at 16. It is therefore urgent that the en banc Court stay the panel's decision immediately.

If the funds are allowed to expire unobligated, the harm to Plaintiffs will be catastrophic. Plaintiffs are corporations and non-profits, large and small, that depend on these foreign assistance funds, in some cases for almost their entire revenue. Approximately 98% of Plaintiff Democracy International's revenues come from USAID awards. JA349 ¶ 7. For Plaintiffs Chemonics and DAI, USAID funding constitutes 88%, and 80% of their annual revenues, which were nearly a billion dollars or over a billion dollars prior to the actions here. JA322–23; JA333 ¶ 4. USAID grant funding represents 40% of Plaintiff AVAC's total operating budget. JA106 ¶ 10.

Because of Defendants' blockade of foreign assistance funds, Plaintiffs have been "walled off from an entire category of projects" for which they are not only "qualified, prepared, and eager to compete," but on which their businesses depend. *Coal. of MISO Transmission Customers v. FERC*, 45

22

F.4th 1004, 1016 (D.C. Cir. 2022). Unrebutted evidence shows that Defendants' actions have already forced Plaintiffs to "significantly cut down on staff or otherwise reduce core operations." JA72; *see, e.g.*, JA106 ¶¶ 11–12; JA111 ¶¶ 10–13; JA249–50 ¶ 11; JA254–55 ¶¶ 10–11; JA264–65 ¶¶ 21–22; JA313–16 ¶¶ 6–10; JA324–26 ¶¶ 7–12; JA334–37 ¶¶ 7–11; JA347–48 ¶ 11; JA360–61 ¶¶ 15–16. Once the tens of billions of dollars in appropriations expire on September 30, Plaintiffs will be forever deprived of the ability to obtain those funds.

### B.    The Balance of the Harms and Public Interest Favor Plaintiffs

Likewise, the balance of harms and public interest strongly favor a stay. Defendants' actions have led to mass death, impoverishment, sickness, and waste—"dire humanitarian consequences" that include an expected annual increase of 71,000 to 166,000 deaths by malaria, 2 to 3 million additional deaths from failure to immunize against vaccine-preventable diseases, and 1 million children not treated for severe acute malnutrition. *See* JA77, JA216–220. Similarly, Defendants' actions have forced layoffs at "thousands of businesses and organizations" reliant on foreign assistance, harming workers, their families, and local and national economies. JA55. By contrast, "there is a substantial public interest in having" the government "abide by the federal

23

laws." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016) (cleaned up).

## CONCLUSION

The en banc Court should issue a stay (or administrative stay) of the panel's opinion and judgment pending resolution of the en banc petition. Plaintiffs respectfully request that the Court issue a stay today, August 15, or as soon as possible thereafter.

Dated: August 15, 2025

*/s/ Lauren E. Bateman*
Lauren E. Bateman
Nicolas A. Sansone
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for AIDS Vaccine Advocacy Coalition, et al.*

Respectfully Submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(301) 823-1148

William C. Perdue
Sally L. Pei
Stephen K. Wirth
Samuel F. Callahan
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000

*Counsel for Global Health Council, et al.*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A), that this motion contains 5,002 words and complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Century font.

Dated: August 15, 2025                    */s/ Daniel F. Jacobson*
                                          Daniel F. Jacobson

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, I caused the foregoing document to be electronically filed using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: August 15, 2025

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson