[ORAL ARGUMENT HELD JULY 7, 2025]
Nos. 25-5097, 25-5098

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

GLOBAL HEALTH COUNCIL, et al.,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, et al.,

*Defendants-Appellants*.

---

AIDS VACCINE ADVOCACY COALITION, et al.,

*Plaintiffs-Appellees*,

v.

UNITED STATES DEPARTMENT OF STATE, et al.,

*Defendants-Appellants*.

---

*On Appeal from the United States District Court
for the District of Columbia*

---

### BRIEF OF CONSTITUTIONAL ACCOUNTABILITY CENTER AS
### *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES'
### PETITION FOR REHEARING EN BANC

---

Elizabeth B. Wydra
Brianne J. Gorod
Brian R. Frazelle
Miriam Becker-Cohen
CONSTITUTIONAL
   ACCOUNTABILITY CENTER
1730 Rhode Island Ave. NW, Suite 1200
Washington, D.C. 20036
(202) 296-6889
brianne@theusconstitution.org

*Counsel for Amicus Curiae*

## STATEMENT REGARDING CONSENT TO FILE
## AND SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for *amicus curiae* Constitutional Accountability Center (CAC) represents that counsel for all Plaintiffs-Appellees have consented to the filing of this brief.  Defendants-Appellants take no position on the filing.[1]

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for *amicus curiae* certifies that a separate brief is necessary.  *Amicus* is a think tank and public interest law firm dedicated to fulfilling the progressive promise of the Constitution's text and history.  CAC works in our courts, through our government, and with legal scholars to improve understanding of the Constitution and to protect the rights, freedoms, and structural safeguards that our nation's charter guarantees.  CAC has filed *amicus* briefs in federal courts in multiple cases about the constitutional separation of powers, including on the merits in the instant cases in this Court and in the District Court, and has accordingly developed expertise in the relevant constitutional text and history.

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amicus curiae* or its counsel made a monetary contribution to its preparation or submission.

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Constitutional Accountability Center states that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

## CERTIFICATE AS TO PARTIES, RULINGS,
## AND RELATED CASES

I.    PARTIES AND *AMICI*

Except for any *amici* who had not yet entered an appearance in this

case as of the filing of the Petition for Rehearing En Banc, all parties,

intervenors, and *amici* appearing in this Court are listed in Petition for

Rehearing En Banc.

II.   RULINGS UNDER REVIEW

Reference to the ruling under review appears in the Petition for

Rehearing En Banc.

III.  RELATED CASES

Reference to any related cases pending before this Court appears in

the Petition for Rehearing En Banc.


Dated:  August 18, 2025                    /s/ Brianne J. Gorod
                                           Brianne J. Gorod

                                           *Counsel for Amicus Curiae*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................... v

GLOSSARY ...................................................................................... xii

INTEREST OF *AMICUS CURIAE* .................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 1

ARGUMENT ................................................................................... 3

    I.    Unilateral Executive Impoundment of Appropriated Funds Violates the Constitution's Separation of Powers, Not Just Appropriations Statutes ................................................................................. 3

    II.   Plaintiffs' Separation-of-Powers Claim Is Judicially Reviewable Under *Dalton v. Specter* ........................................................ 5

CONCLUSION ................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*CFPB v. Cmty. Fin. Servs. Ass'n of Am.*,
  601 U.S. 416 (2024) ................................................................ 3

*Clinton v. City of New York*,
  524 U.S. 417 (1998) ................................................................ 4

*Dakota Cent. Tel. Co. v. South Dakota ex rel. Payne*,
  250 U.S. 163 (1919) ................................................................ 2

*Dalton v. Specter*,
  511 U.S. 462 (1994) ............................................................ 1, 2, 5-7

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981) ................................................................ 9

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ................................................................ 9, 10

*In re Aiken County*,
  725 F.3d 255 (D.C. Cir. 2013) ................................................ 4, 5

*Kendall v. United States ex rel. Stokes*,
  37 U.S. 524 (1838) .................................................................. 4

*Mistretta v. United States*,
  488 U.S. 361 (1989) ................................................................ 3

*Sierra Club v. Trump*,
  963 F.3d 874 (9th Cir. 2020) ................................................ 11

*United States v. McIntosh*,
  833 F.3d 1163 (9th Cir. 2016) .............................................. 11

*Widakuswara v. Lake*,
  No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ............... 11

## TABLE OF AUTHORITIES – cont'd

**Page(s)**

*Widakuswara v. Lake*,
   No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) .............. 11

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ........................................................................... 3, 7, 8

CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8, cl. 1 ...................................................................... 3

U.S. Const. art. I, § 9, cl. 7 ...................................................................... 4, 11

OTHER AUTHORITIES

*The Debates in the Several State Conventions on the Adoption of the
   Federal Constitution* (Jonathan Elliot ed., 1836) ............................... 1

Exec. Order No. 14,169, 90 Fed. Reg. 8619 (Jan. 20, 2025).................. 10

*The Federalist No. 30* (Clinton Rossiter ed., 1961)............................... 4

*Presidential Authority to Impound Funds Appropriated for Assistance to
   Federally Impacted Schools*, 1 Supp. Op. O.L.C. 303 (1969)............ 5

**GLOSSARY**

APA          Administrative Procedure Act

CAC          Constitutional Accountability Center

CFPB         Consumer Financial Protection Bureau

## INTEREST OF *AMICUS CURIAE*

Constitutional Accountability Center (CAC) is a think tank and public interest law firm dedicated to fulfilling the progressive promise of the Constitution's text and history. CAC works to improve understanding of the Constitution and preserve the rights, freedoms, and structural safeguards that it guarantees, and accordingly has an interest in this case.

## INTRODUCTION
## AND SUMMARY OF ARGUMENT

The panel majority's conclusion in this case—that presidential usurpation of Congress's appropriations and spending powers raises no problem of constitutional dimension—would have astonished the founding generation. To the Framers of our Constitution, perhaps no tenet was more central to the preservation of liberty than the need to separate the powers of the sword and the purse. As Alexander Hamilton put it, "neither one nor the other shall have both, because this would destroy that division of powers on which political liberty is founded, and would furnish one body with all the means of tyranny." 2 *The Debates in the Several State Conventions on the Adoption of the Federal Constitution* 348-49 (Jonathan Elliot ed., 1836). The panel majority, through a fundamental misunderstanding of *Dalton v. Specter*, 511 U.S. 462 (1994), reduces this constitutional pillar to an empty promise—unenforceable in court even by individuals who suffer "massive

1

financial injuries" from the executive branch's unilateral impoundment of appropriated funds.  Maj. Op. 13 (citation omitted).

The panel gets *Dalton* wrong at every step.  It misreads *Dalton*'s holding that "*all* executive actions in excess of statutory authority" are not "*ipso facto* unconstitutional," *Dalton*, 511 U.S. at 472 (emphasis added), to mean that *no* executive action in excess of statutory authority is *ever* unconstitutional.  Maj. Op. 15.  Yet *Dalton* makes clear that plaintiffs may bring constitutional claims when the President "act[s] in violation of the Constitution," *Dalton*, 511 U.S. at 474, such as by usurping another branch's core power or exercising a power the Constitution does not delegate to him, *id.* at 473.  In such cases, there is "a want of [Presidential] power," as opposed to "a mere excess or abuse of discretion in exerting a power given," *id.* at 474 (alteration in original) (quoting *Dakota Cent. Tel. Co. v. South Dakota ex rel. Payne*, 250 U.S. 163, 184 (1919)).  Indeed, the plaintiffs in *Dalton* failed because the statute at issue did not limit the President's discretion "at all."  *Id.* at 476.

Plaintiffs' separation-of-powers claim here is wholly different than the claim in *Dalton*.  Plaintiffs here allege that Defendants refused to execute a mandatory appropriations statute, seizing for themselves Congress's power of the purse with the goal of "negat[ing] congressional … policies."  JA71 (quotation marks

2

omitted).  That makes this case like *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)—the archetypal separation-of-powers case.

If the panel's interpretation of *Dalton* is permitted to stand, it will have staggering implications, distorting the Supreme Court's careful handling of that case, creating a split with other circuits, and allowing the executive branch to evade constitutional review simply by asserting that a statute authorizes its conduct—no matter how baseless that assertion, and even in cases raising the "concern[s] of encroachment and aggrandizement" that have "animated [the Supreme Court's] separation-of-powers jurisprudence and aroused [its] vigilance." *Mistretta v. United States*, 488 U.S. 361, 382 (1989).  This Court should grant rehearing.

## ARGUMENT

### I.    Unilateral Executive Impoundment of Appropriated Funds Violates the Constitution's Separation of Powers, Not Just Appropriations Statutes.

The choice to vest Congress with control over appropriations and spending was "uncontroversial" at the Founding, *CFPB v. Cmty. Fin. Servs. Ass'n of Am.*, 601 U.S. 416, 431 (2024), a consensus reflecting centuries of struggle in England for legislative supremacy over fiscal matters.  Thus, when the Framers drafted the Constitution, there was no question that the power of the purse would be given to Congress.  Congress's power under the Spending Clause "to pay the Debts and provide for the common Defence and general Welfare of the United States," U.S.

3

Const. art. I, § 8, cl. 1, was deemed "indispensable" to the federal government's ability to do its job, *The Federalist No. 30*, at 188 (Alexander Hamilton) (Clinton Rossiter ed., 1961). At the same time, the Appropriations Clause evinced a clear limitation on executive authority: "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7.

Both the Supreme Court and this Court have recognized that these provisions, coupled with structural separation-of-powers principles, mean the executive has no constitutional power to "spend less than the full amount appropriated by Congress for a particular project or program" for "policy reasons." *In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013). The Supreme Court first made this clear in 1838, unanimously rejecting the authority of the Postmaster General to withhold appropriated funding for a contract he claimed was tainted by political favoritism. *Kendall v. United States ex rel. Stokes*, 37 U.S. 524 (1838). The issue came to a head again during the 1970s when "President Nixon, the Mahatma Gandhi of all impounders, asserted … that his constitutional right to impound appropriated funds was absolutely clear." *Clinton v. City of New York*, 524 U.S. 417, 468 (1998) (Scalia, J., concurring in part and dissenting in part) (quotation marks omitted). A slew of decisions "proved him wrong." *Id.*

Before long, Congress and the executive branch joined the chorus— Congress through passage of the Impoundment Control Act of 1974, designed to

4

rein in unconstitutional impoundments, and the executive branch through a series of memoranda from the Office of Legal Counsel. As future Chief Justice Rehnquist put it as the leader of that office, it is "extremely difficult to formulate a constitutional theory to justify a refusal by the President to comply with a congressional directive to spend." *Presidential Authority to Impound Funds Appropriated for Assistance to Federally Impacted Schools*, 1 Supp. Op. O.L.C. 303, 310 (1969).

Thus, all three branches of government have recognized that the Constitution prohibits the executive branch from refusing to spend appropriated funds. These are "settled, bedrock principles of constitutional law." *Aiken County*, 725 F.3d at 259.

## II. Plaintiffs' Separation-of-Powers Claim Is Judicially Reviewable Under *Dalton v. Specter*.

**A.** The linchpin of the panel majority's holding rests on a misunderstanding of *Dalton v. Specter*. *Dalton* involved the President's decision to close a naval shipyard pursuant to a statute governing base closures. The plaintiffs asserted that the President "violated the terms of the [statute] by accepting procedurally flawed recommendations" from other executive officials regarding the closure. 511 U.S. at 474. The Supreme Court rejected the plaintiffs' effort to convert this alleged statutory violation into a constitutional violation. It reasoned that the plaintiffs' constitutional claim was really just a challenge to the President's "exercise [of]

discretion Congress ha[d] granted him" in the statute.  *Id.* at 476.  And critically, that statute did "not *at all* limit the President's discretion."  *Id.* (emphasis added).

In reaching that conclusion, the Supreme Court cautioned that "[o]ur cases do not support the proposition that *every* action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution."  *Id.* at 472 (emphasis added).  The Court noted that its prior decisions would not have distinguished between statutory and constitutional claims "[i]f *all* executive actions in excess of statutory authority were *ipso facto* unconstitutional."  *Id.* (emphasis added).  But the Court never suggested that *no* action by the President in excess of his statutory authority may *ever* violate the Constitution.

Indeed, *Dalton* makes clear that some executive actions in excess of statutory authority *do* give rise to actionable constitutional claims.  As relevant here, *Dalton* makes clear that plaintiffs may bring constitutional claims when the President "act[s] in violation of the Constitution," *id.* at 474, such as when he exercises a power not delegated to him, *id.* at 473, or one expressly delegated to another branch.  In such instances, there is "a want of [Presidential] power," as opposed to "a mere excess or abuse of discretion in exerting a power given."  *Id.* at 474 (alteration in original) (citation omitted).

6

Of course, a "want of [Presidential] power," *id.*, may exist when the President violates both the Constitution *and* a statute. And a want of presidential power is not cured simply because the President defends his action by claiming statutory authorization for it. After all, the President's authority "must stem either from an act of Congress or from the Constitution itself," *Youngstown*, 343 U.S. at 585, so it is hardly surprising that in the face of a separation-of-powers challenge, the executive branch will often point to a statute purportedly authorizing its conduct. If *Dalton* means that plaintiffs may never "bring a freestanding constitutional claim" when the defendant's "claimed authority" is "statutory," Maj. Op. 5, it is difficult to see how plaintiffs could *ever* bring separation-of-powers claims. The defendant's mere assertion of statutory authority, no matter how baseless, would foreclose those claims, according to the panel majority.

To be sure, *Youngstown* was the rare case in which "no statutory authority was claimed" by the President to justify his seizure of the country's steel mills. *Dalton*, 511 U.S. at 473. However, *Youngstown* explicitly contemplates the adjudication of separation-of-powers claims against the backdrop of asserted statutory authority. Perhaps most notably, Justice Jackson's concurring opinion elaborates on three "practical situations" in which plaintiffs "may challenge [the President's] powers" and courts must assess the scope of executive authority under the Constitution: (1) "[w]hen the President acts pursuant to an express or implied

7

authorization of Congress," (2) "[w]hen the President acts in absence of either a congressional grant or denial of authority," and (3) "[w]hen the President takes measures incompatible with the expressed or implied will of Congress." *Youngstown*, 343 U.S. at 635-37 (Jackson, J., concurring).

The first and third categories plainly require a statutory inquiry as part of the constitutional one.  Indeed, in *Youngstown* itself, Justice Jackson analyzed the text of several relevant condemnation statutes to conclude that their policies were "inconsistent" with the President's seizure of the steel mills, putting that seizure in the third category.  *Id.* at 639-40.  Thus, the government's argument here "that it did not exceed its statutory authorization or act contrary to the statutes" does not make *Youngstown* "inapposite," as the panel erroneously concluded, Maj. Op. 20.

By making the government's claimed source of authority dispositive, the panel decision would allow the President—or even just his lawyers—to dictate whether a plaintiff's constitutional claim is reviewable.  To illustrate, imagine that President Truman, instead of disclaiming statutory authority for his seizure of the steel mills, had invoked some law that he dubiously claimed authorized his conduct alongside Article II.  Or imagine that Truman himself did not point to that law, but his *attorneys* did in the course of litigation.  Even more to the point, imagine that Truman's attorneys began by asserting "vast and generally unreviewable" Article II powers before abruptly changing course during litigation and "disclaim[ing] any

8

constitutional defense," relying on statutory authority alone. Maj. Op. 20 (quotation marks omitted). Under the panel's reading of *Dalton*, that litigation tactic would insulate from constitutional review the *exact same executive action* challenged in *Youngstown*. That cannot be.

Since *Youngstown*, the Supreme Court has confirmed that the executive's assertion of statutory authority does not foreclose review of a separation-of-powers claim. For instance, in *Dames & Moore v. Regan*, 453 U.S. 654 (1981), the Court resolved the merits of a claim that the President and the Treasury Secretary went "beyond their statutory and constitutional powers." *Id.* at 667. Unlike in *Youngstown*, in *Dames & Moore* the President "purported to act under authority of" two federal statutes, *id.* at 675, which the Court had to interpret to resolve the separation-of-powers claim, *id.* at 670-74. The presence of the statutory dispute did not, however, nullify the plaintiffs' freestanding constitutional claim. *Id.* at 674.

Likewise, in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), the plaintiffs challenged the executive branch's method of counting overseas federal employees for the census, bringing claims "under both the APA and the Constitution." *Id.* at 796. The Court held that the APA claims were not viable, *id.* at 796-801, but also made explicit that this "d[id] not dispose of [the plaintiffs'] constitutional claims," *id.* at 801. Although the executive branch relied entirely on statutory authority, *id.*

9

at 791-94, the Court resolved "[o]n the merits" the plaintiffs' claim "that the Secretary [of Commerce]'s allocation of overseas federal employees … violated the command of Article I, § 2, cl. 3." *Id.* at 803.

*Dalton* did not overrule these cases, which run counter to the panel's holding that "the President's refusal to execute a law for policy reasons is merely a violation of the statute that he declines to follow and does not present a constitutional cause of action." Dissenting Op. 20. Instead, *Dalton* allows the adjudication of separation-of-powers claims involving colorable allegations that the executive has usurped a core congressional power in defiance of statutory commands.

**B.** That is precisely the type of claim that Plaintiffs bring here. Unlike in *Dalton*, Plaintiffs' separation-of-powers claim is not premised on the President exceeding some delegated discretionary power. Rather, Plaintiffs challenge an executive order that invoked for its authority both "the Constitution and the laws of the United States," Exec. Order No. 14,169, 90 Fed. Reg. 8619 (Jan. 20, 2025), and unilaterally rescinded billions of dollars of funding made mandatory by appropriations laws.

To be sure, the Presidents' actions clearly violate those laws. But a blanket refusal to execute appropriations laws based on policy disagreements also amounts to the "effective[] repeal[]" of those laws in violation of "the separation of powers,

10

the Presentment Clause, the Appropriations Clause, the Spending Clause, and the Take Care Clause." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *12 (D.C. Cir. May 3, 2025) (Pillard J., dissenting); *see Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (en banc) (vacating panel decision "substantially for the reasons explained by Judge Pillard").

Because the Appropriations Clause requires that appropriations be "made by Law," U.S. Const. art. I, § 9, cl. 7, constitutional claims challenging impoundments of appropriated funds will often involve the alleged violation of appropriations statutes. But courts have recognized freestanding separation-of-powers claims premised on the Appropriations Clause even when the parties dispute whether the challenged executive action complies with an appropriations statute. *See, e.g.*, *United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016) (holding that alleged violation of an appropriations statute would also violate the Appropriations Clause and its "separation-of-powers limitation," which plaintiffs "can invoke to challenge [executive action]"); *Sierra Club v. Trump*, 963 F.3d 874, 890 (9th Cir. 2020) (recognizing that "[u]nder *Dalton*, … violations of the Appropriations Clause may give rise to viable causes of action" under the Constitution), *vacated and remanded sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021).

11

In short, the existence of a statutory dispute about an appropriations law does not foreclose a constitutional separation-of-powers claim. The panel majority—not *Dalton*—concocted that rule.

## CONCLUSION

For the foregoing reasons, this Court should grant rehearing en banc.

Respectfully submitted,

/s/ Brianne J. Gorod
Elizabeth B. Wydra
Brianne J. Gorod
Brian R. Frazelle
Miriam Becker-Cohen
CONSTITUTIONAL ACCOUNTABILITY CENTER
1730 Rhode Island Ave. NW, Suite 1200
Washington, D.C. 20036
(202) 296-6889
brianne@theusconstitution.org

*Counsel for Amicus Curiae*

Dated: August 18, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because it contains 2,514 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

Executed this 18th day of August, 2025.

/s/ Brianne J. Gorod
Brianne J. Gorod

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2025, I electronically filed the foregoing document using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

Dated: August 18, 2025

/s/ Brianne J. Gorod
Brianne J. Gorod