Nos. 25-5097, 25-5098

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

GLOBAL HEALTH COUNCIL, *et al.*,
PLAINTIFFS-APPELLEES,

v.

DONALD J. TRUMP, *et al.*,
DEFENDANTS-APPELLANTS.

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**BRIEF OF THE DISTRICT OF COLUMBIA, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAII, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, RHODE ISLAND, VERMONT, WASHINGTON, AND WISCONSIN AS AMICI CURIAE IN SUPPORT OF APPELLEES' PETITION FOR REHEARING EN BANC**

BRIAN L. SCHWALB
Attorney General for the
    District of Columbia

EMMA P. SIMSON
Senior Counsel to the
    Attorney General

ELIZA SIMON
Senior Counsel for
    Federal Initiatives

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

TESSA GELLERSON
CARA SPENCER
Assistant Attorneys General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned certifies as follows:

A. *Parties and amici.*—All parties and amici appearing before the district court and in this Court are listed in the Brief for Appellants, the Brief for Appellees, and Appellees' Certificate as to Parties, Rulings, and Related Cases, filed with their Petition for Rehearing En Banc.

B. *Rulings under review.*—References to the rulings under review appear in the Brief for Appellants and the Brief for Appellees.

C. *Related cases*.—Related cases are listed in the Brief for Appellants and the Brief for Appellees.

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

INTRODUCTION AND INTEREST OF AMICI CURIAE.....................................1

ARGUMENT .........................................................................................3

    I.    The Executive Branch Is Constitutionally Obligated To Spend Funds Appropriated By Congress ..........................................................3

    II.    The Unlawful Impoundment Of Foreign Assistance Funds Has Harmed The States And Their Residents And Is Against The Public Interest ...........................................................................................7

CONCLUSION ..................................................................................12

# TABLE OF AUTHORITIES*

*Cases*

*Cincinnati Soap Co. v. United States*, 301 U.S. 308 (1937) ..................................... 3

*\*City & Cnty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) .......................................................................... 5, 6

*City & Cnty. of San Francisco v. Trump*,
  No. 25-cv-1350, 2025 WL 1282637 (N.D. Cal. May 3, 2025) ........................ 6, 7

*Clinton v. City of New York*, 524 U.S. 417 (1998) .................................................. 3, 4

*Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am.*,
  601 U.S. 416 (2024) ............................................................................................ 3

*Harrington v. Bush*, 553 F.2d 190 (D.C. Cir. 1977) ........................................ 1, 4, 6

*\*In re Aiken Cnty.*, 725 F.3d 255 (D.C. Cir. 2013) .......................................... 2, 4, 5

*Kendall v. United States ex rel. Stokes*, 37 U.S. 524 (1838) .................................... 6

*Maryland v. U.S. Dep't of Agric.*,
  No. 1:25-cv-748, 2025 WL 973159 (D. Md. Apr. 1, 2025) .............................. 11

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
  763 F. Supp. 3d 36 (D.D.C. 2025) ...................................................................... 6

*Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974) .................... 6

*New York v. Trump*, 133 F.4th 51 (1st Cir. 2025) .................................................... 6

*New York v. Trump*,
  No. 25-cv-39, 2025 WL 715621 (D.R.I. Mar. 6, 2025) ........................................ 6

*Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990) ........................................... 3

---

\*        Authorities upon which Amici States chiefly rely are marked with asterisks.

*Pursuing America's Greatness v. Fed. Election Comm'n*,
831 F.3d 500 (D.C. Cir. 2016) ...................................................................8

*Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180 (D.C. Cir. 1992) ..................1, 3

*U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*,
665 F.3d 1339 (D.C. Cir. 2012) ...........................................................3


### Constitutional Provisions

*U.S. Const. art. I, § 9, cl. 7 ........................................................... 1, 3, 6

U.S. Const. art. II, § 3 .........................................................................6


### Statutes

2 U.S.C. § 683 ..................................................................................4

2 U.S.C. § 684 ..................................................................................5

Congressional Budget and Impoundment Control Act of 1974,
Pub. L. No. 93-344, 88 Stat. 297
(codified as amended at 2 U.S.C. § 682 *et seq.*) ...................................4


### Executive and Legislative Materials

Dep't of Just., Off. of Legal Couns.,
Presidential Authority to Impound Funds Appropriated for Assistance
to Federally Impacted Schools, 1 Op. O.L.C. Supp. 303 (Dec. 1, 1969) ..............5


### Other Authorities

Sarah Atwood, *Food Research Halted at MSU After Trump's
USAID Stop Work Order*, Lansing State J. (Feb. 25, 2025) ..................................8

Decl. of Leslie Anne Brunelli, *New Mexico v. Musk*,
No. 1:25-cv-429 (D.D.C. Feb. 14, 2025), Dkt. No. 6-8 ....................................8, 9

iv

Meredith Cohn & Jasmine Vaughn-Hall,
    *Another Baltimore-based Global Aid Group Faces Cuts:*
    *Catholic Relief Services*, Balt. Banner (Feb. 6, 2025) ........................................10

Tom Crann & Gretchen Brown, *USAID cuts will impact*
    *Minnesota farmers*, MPR News (Feb. 27, 2025).................................................12

Zachery Eanes, *USAID funding freeze could disrupt large*
    *employers in the Triangle*, Axios (Feb. 5. 2025) .................................................11

Feed the Future Innovation Lab Network ................................................................8

FHI 360, *2024 Financial Summary* (Mar. 17, 2024)..............................................11

Alex Fitzpatrick, *How much federal money your state gets*,
    Axios (Apr. 19, 2025) .............................................................................................7

Haajrah Gilani, *Trump's Cuts to USAID Threaten UNR's*
    *Global Partnerships and Research*, Las Vegas Sun (Feb. 13, 2025)....................9

Elizabeth Hernandez, *USAID gutting hits Colorado*
    *as organizations, small businesses struggle to survive*,
    Denver Post (Feb. 14, 2025) .................................................................................11

*The Impoundment Control Act of 1974: What Is It? Why Does It Matter?*,
    House Comm. on the Budget (Oct. 23, 2019) .......................................................4

Rusty Jacobs, *Trump's cuts to funding for scientific research*
    *pose grave risks for RTP and global health*, WUNC (May 5, 2025).................11

Peter G. Peterson Foundation, *How Much Funding Do State and*
    *Local Governments Receive From Federal Government?* (Apr. 11, 2024)..........7

Press Release, *FHI 360 announces reductions in force* (Apr. 10, 2025) ...............11

Press Release, Marc Parlange, President, Univ. of Rhode Island,
    *Update on USAID Programs and Positions* (Feb. 27, 2025) ...............................9

Press Release, *RTI International announces workforce realignment*
    (Mar. 25, 2025) .....................................................................................................11

Lauren Quinn, *$1M gift to keep Soybean Innovation Lab
operational after USAID closure*, ACES News (Apr. 28, 2025) ........................10

Greg Rosalsky, *Can President Trump ignore Congress' spending laws?
The debate over 'impoundment'*, NPR (Feb. 18, 2025).........................................6

Stephanie Saul, *Johns Hopkins to Cut More Than 2,000 Workers
Funded by Federal Aid*, N.Y. Times (Mar. 13, 2025) .........................................10

Joseph Story, Commentaries on the Constitution of the United States
(1st ed. 1833)......................................................................................................3

Graciela Tiu, *UC Davis research funding impacted by executive actions*,
Cal. Aggie (May 6, 2025) ...................................................................................10

The Federalist No. 58 (James Madison) (Clinton Rossiter ed., 1961) ......................4

Christopher Vondracek, *Shuttering of USAID could mean the end
of millions in income for Midwest farm operations,*
Minn. Star Tribune (Feb. 6, 2025) ......................................................................12

Caren R. Weintraub, *UC Davis to Close Feed the Future Innovation Labs
Amid Loss in USAID Funding*, U.C. Davis Coll. of Agric. & Env't Sci.
(Apr. 3, 2025).......................................................................................................8

**INTRODUCTION AND INTEREST OF AMICI CURIAE**

The Constitution gives Congress, not the President, the authority to appropriate funds. U.S. Const. art. I, § 9, cl. 7. Yet in this case, the President and other Executive Branch officials assert that they can unilaterally withhold billions of dollars of appropriated funds based on the Administration's policy judgments. A group of states led by Ohio and South Carolina (Ohio Amici) has echoed this extraordinary view of executive power. *See* Brief of Ohio, South Carolina, and 18 Other States as Amici Curiae in Support of Appellants (Ohio Amici Br.).

But neither the President's nor his subordinates' policy preferences can override Congress's "exclusive power over the federal purse." *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992) (quoting *Harrington v. Bush*, 553 F.2d 190, 194 n.7 (D.C. Cir. 1977)). The District of Columbia, Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, Washington, and Wisconsin (collectively, Amici States) file this brief as amici curiae in support of Appellees and urge this Court to grant rehearing en banc and reject an unbridled view of executive power that would risk substantial harm to the states.

En banc review is warranted in light of the exceptional importance of this case. The panel majority "acquiesce[s]" to "unlawful" impoundment of funds by

the Executive that threatens to destabilize the separation of powers. Dissenting Op. 47. Amici States have a strong interest in avoiding that derailment of our constitutional order and in the longstanding principle that, absent congressional authorization, no Executive Branch official may withhold lawfully appropriated federal funds in service of the President's policy goals. *See In re Aiken Cnty.*, 725 F.3d 255, 259, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.). Acceptance of a contrary position would have significant ramifications for state and local governments, which receive more than a *trillion* dollars annually in congressionally appropriated funds to deliver healthcare, improve infrastructure, respond to natural disasters, and provide public education, among other vital programs and services.

This case underscores how much is at stake. Halting the flow of funding for foreign assistance programs at the United States Agency for International Development (USAID) and the State Department has harmed universities, farmers, nonprofits, and small businesses in the Amici States. Hundreds of domestic workers have been terminated, American crops intended for international distribution have been unallocated, and cutting-edge research projects have been halted. These harms bolster the district court's determination that, beyond Appellees' likelihood of success on the merits, the equities strongly support granting a preliminary injunction.

2

## ARGUMENT

I.    **The Executive Branch Is Constitutionally Obligated To Spend Funds Appropriated By Congress.**

1.    The Constitution gives Congress—not the President—"control over the public fisc." *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am.* (*CFSA*), 601 U.S. 416, 420 (2024).    This foundational separation-of-powers principle is reflected in the "straightforward and explicit command" of the Appropriations Clause, *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990), which provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law," U.S. Const. art. I, § 9, cl. 7.

The command of the Appropriations Clause serves as both a source of authority and protection for Congress's "exclusive power over the federal purse," *Rochester Pure Waters Dist.*, 960 F.2d at 185, which, in turn, "restrain[s] . . . Executive Branch officers."    *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1347 (D.C. Cir. 2012) (Kavanaugh, J.).    Without it, "the executive would possess an unbounded power over the public purse of the nation; and might apply all its monied resources at his pleasure."    3 Joseph Story, Commentaries on the Constitution of the United States § 1342, at 213-14 (1st ed. 1833); *see Richmond*, 496 U.S. at 425 (emphasizing the importance of "a valid reservation of congressional control over funds in the Treasury"); *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937) (similar); *Clinton v. City of New York*,

524 U.S. 417, 451 (1998) (Kennedy, J., concurring) (similar); The Federalist No. 58, at 359 (James Madison) (Clinton Rossiter ed., 1961) (similar).

As relevant here, Congress exercised its "plenary" appropriations authority, *Harrington*, 553 F.2d at 194, to enact the Congressional Budget and Impoundment Control Act of 1974, Pub. L. No. 93-344, 88 Stat. 297 (codified as amended at 2 U.S.C. § 682 *et seq.*), which provides a mechanism for the President to propose spending less than Congress has appropriated for a project or program, including when such a proposal stems from a divergent policy judgment about the best use of funds, *see* 2 U.S.C. § 683(b); *id.* § 684(b); *see also* Appellees' Br. 36-37. Absent Congress's assent, however, the President and other Executive Branch officials must fully spend appropriated funds. *See In re Aiken Cnty.*, 725 F.3d at 261 n.1; Appellees' Br. 21.

2. Here, the district court concluded that the President and other Executive Branch agencies and officials are likely "acting in violation of the separation of powers" by refusing to spend appropriated funds. J.A. 63, 65-66. The district court also found that these agencies and officials had not undertaken the recission or deferral procedures prescribed by the Impoundment Control Act. J.A. 66 (referring to 2 U.S.C. §§ 683(a), 684(a)). Rather, Executive Branch officials appear to have unilaterally frozen funding because they believe there are better uses for this

taxpayer money.  *See, e.g.*, Appellees' Br. 11-12 (detailing the Executive Branch's policy-based rationales for its funding freezes).

Ohio Amici defend this extraordinary assertion of executive power, arguing that "[c]ongressional appropriations [] act as a hard budgetary ceiling, not a floor." Ohio Amici Br. 1-2 (emphasis omitted).  In their view, the President has "inherent power" and "discretion" over the enforcement of appropriations laws, and Congress may not "micromanag[e] the President's expenditures" of appropriated funds.  Ohio Amici Br. 2.

That theory is wrong.  The President does not have unilateral authority to "spend less than the full amount appropriated by Congress for a particular project or program."  *In re Aiken Cnty.*, 725 F.3d at 261 n.1 (Kavanaugh, J.).  Nor can he independently freeze, delay, or reallocate those funds "to effectuate [his] own policy goals."  *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1235 (9th Cir. 2018).  Rather, when the President disagrees with a congressional appropriation, he "must propose the recission of funds, and Congress then may decide whether to approve a recission bill."  *In re Aiken Cnty.*, 725 F.3d at 261 n.1 (citing 2 U.S.C. § 683(a)); *see* 2 U.S.C. § 684(a); Dep't of Just., Off. of Legal Couns., Presidential Authority to Impound Funds Appropriated for Assistance to Federally Impacted Schools, 1 Op. O.L.C. Supp. 303, 309 (Dec. 1, 1969), tinyurl.com/2pnw6t6j.

This conclusion is rooted in several sources.  For one, Congress has plenary authority over appropriations.  U.S. Const. art. I, § 9, cl. 7; *Harrington*, 553 F.2d at 194.  Moreover, the President has a corresponding obligation to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3; *see Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 604 (D.C. Cir. 1974).  When Congress enacts an appropriation into law, it prescribes the budget authority that the Executive Branch must obligate.  *See* Appellees' Br. 32.  The President can lobby Congress to consider his policy preferences as appropriations are crafted, but once enacted, it is the text of the appropriation that governs.  *See City & Cnty. of San Francisco*, 897 F.3d at 1232; *Kendall v. United States ex rel. Stokes*, 37 U.S. 524, 613 (1838).

3.    The Administration has repeatedly sought to usurp Congress's constitutional authority over appropriations—all in furtherance of the President's preferred policy objectives.  *See, e.g.*, Greg Rosalsky, *Can President Trump ignore Congress' spending laws? The debate over 'impoundment'*, NPR (Feb. 18, 2025), tinyurl.com/vbahdetf.  To be sure, federal courts—including the court below—have rebuffed these efforts and reaffirmed the Executive's obligation to spend money appropriated by Congress.  *See, e.g.*, *New York v. Trump*, No. 25-cv-39, 2025 WL 715621, at *1 (D.R.I. Mar. 6, 2025), *stay pending appeal denied*, 133 F.4th 51 (1st Cir. 2025); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 36, 55-56 (D.D.C. 2025); *City & Cnty. of San Francisco v. Trump*, No. 25-cv-1350,

2025 WL 1282637 (N.D. Cal. May 3, 2025). But this ongoing threat of presidential impoundment of congressionally appropriated funds poses substantial risks to states and local governments, which rely on federal funds for a significant portion of their total annual revenues. In 2023, federal outlays to state and local governments totaled more than $1.1 trillion. Peter G. Peterson Foundation, *How Much Funding Do State and Local Governments Receive From Federal Government?* (Apr. 11, 2024), tinyurl.com/yc3v746z. And in nearly half of the states, federal funding makes up more than 40% of annual revenue. Alex Fitzpatrick, *How much federal money your state gets*, Axios (Apr. 19, 2025), tinyurl.com/y822r6ze.

Without these federal funds, states would likely be unable to maintain the same level of programs and services for healthcare, infrastructure, public education, and natural disaster response efforts. Adopting Ohio Amici's theory would allow the President's policy preferences to justify the withholding of congressionally appropriated dollars for state-run programs, throwing into chaos states' ability to anticipate annual revenues and execute critical programs and services.

## II.    The Unlawful Impoundment Of Foreign Assistance Funds Has Harmed The States And Their Residents And Is Against The Public Interest.

The unlawful withholding of billions of dollars of foreign assistance funds has inflicted substantial harms on universities, farmers, nonprofits, and small businesses in the Amici States. These harms bolster the district court's determination that the public interest supports granting a preliminary injunction. *See* J.A. 77; *accord*

7

*Pursuing America's Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511-12 (D.C. Cir. 2016) (considering the impact of a preliminary injunction on non-parties when evaluating the public interest).

1.  The President's unlawful impoundment has deprived universities in the Amici States of more than $550 million in congressionally appropriated research grants and contracts. Affected institutions conduct critical research on agriculture, fisheries, livestock, and public health programs that support humanitarian and foreign assistance around the globe.

USAID has frozen funding, for example, at more than a half-dozen Feed the Future Innovation Labs at universities in the Amici States, including California, Illinois, Michigan, Massachusetts, New York, and Washington. *See* Feed the Future Innovation Lab Network, tinyurl.com/5hys5ucr. These labs have suspended operations, shed staff, and halted critical research. *See, e.g.*, Decl. of Leslie Anne Brunelli at 3 (¶¶ 8-10), *New Mexico v. Musk*, No. 1:25-cv-429 (D.D.C. Feb. 14, 2025), Dkt. No. 6-8 (Brunelli Decl.); Sarah Atwood, *Food Research Halted at MSU After Trump's USAID Stop Work Order*, Lansing State J. (Feb. 25, 2025), tinyurl.com/r8sdzpwu; Caren R. Weintraub, *UC Davis to Close Feed the Future Innovation Labs Amid Loss in USAID Funding*, U.C. Davis Coll. of Agric. & Env't Sci. (Apr. 3, 2025), tinyurl.com/bdz9enp2.

Similarly, the appropriations freeze has stopped the flow of millions of dollars of funding to universities in Arizona, California, Maryland, Michigan, Nevada, New York, and Rhode Island that are developing tools to support vaccine development, violence prevention, disaster preparedness, and global public health initiatives. *See, e.g.*, Press Release, Marc Parlange, President, Univ. of Rhode Island, Update on USAID Programs and Positions (Feb. 27, 2025), tinyurl.com/22z4stnp; Haajrah Gilani, *Trump's Cuts to USAID Threaten UNR's Global Partnerships and Research*, Las Vegas Sun (Feb. 13, 2025), tinyurl.com/mvysuc4b.

The fallout from the universities' shuttering of critical research agendas has resulted in three distinct harms to the Amici States and their residents.

*First*, these research projects provide substantial positive economic impacts domestically.  Brunelli Decl. at 3 (¶ 9).  For example, many of the affected programs protect domestic farmers from emerging threats to crops by developing techniques to address unfamiliar pests and diseases.  *See* Brunelli Decl. at 3 (¶ 9).  Moreover, research and development investments in livestock- and fishery-health are critical for global food security.  *See* Brunelli Decl. at 4 (¶ 11).

*Second*, without these funds, many of the universities' labs and research programs will be forced to terminate grant- and contract-supported research faculty and staff, causing upticks in unemployment and applications for state-supported benefits programs, or will have to turn to state governments to fill in the financial

9

gaps—straining state resources. *See, e.g.*, Lauren Quinn, *$1M gift to keep Soybean Innovation Lab operational after USAID closure*, ACES News (Apr. 28, 2025), tinyurl.com/a66aymxt.

*Third*, this funding freeze has impeded the universities' charitable missions of educating state residents and contributing to the local economy through a robust research agenda. Abrupt funding cuts have interrupted students' research plans and delayed time-sensitive research projects. *See, e.g.*, Graciela Tiu, *UC Davis research funding impacted by executive actions*, Cal. Aggie (May 6, 2025), tinyurl.com/y6tva6fm.

2. Farmers, nonprofits, and other private businesses in the Amici States have also faced harm. In Maryland, for example, JHpiego, a nonprofit partner of Johns Hopkins University, "will lose $800 million in funding," causing the termination of nearly 250 employees in Baltimore and another 1,975 abroad. *See* Stephanie Saul, *Johns Hopkins to Cut More Than 2,000 Workers Funded by Federal Aid*, N.Y. Times (Mar. 13, 2025), tinyurl.com/bdjsbx6y; *see also* Meredith Cohn & Jasmine Vaughn-Hall, *Another Baltimore-based Global Aid Group Faces Cuts: Catholic Relief Services*, Balt. Banner (Feb. 6, 2025), tinyurl.com/czk86yhp.

The withholding of appropriations has also impacted one of North Carolina's most vital economic engines—the Research Triangle, home to the largest research park in North America, hundreds of businesses and nonprofits, and premier research

10

universities. *See* Zachery Eanes, *USAID funding freeze could disrupt large employers in the Triangle*, Axios (Feb. 5. 2025), tinyurl.com/3ttscjaf; Rusty Jacobs, *Trump's cuts to funding for scientific research pose grave risks for RTP and global health*, WUNC (May 5, 2025), tinyurl.com/yxuame5f.

To take one example, Family Health International, a Research Triangle organization, has historically received USAID funding to address HIV/AIDS, tuberculosis, and malaria epidemics. *See* FHI 360, *2024 Financial Summary* (Mar. 17, 2024), tinyurl.com/bdnyzxmy. In April, it announced the termination of 483 of its domestic employees, including 144 located in North Carolina, as a result of the funding freeze. *See* Press Release, *FHI 360 announces reductions in force* (Apr. 10, 2025), tinyurl.com/2wdztn5d; *see also* Press Release, *RTI International announces workforce realignment* (Mar. 25, 2025), tinyurl.com/hvzkpnph (detailing layoffs at another Research Triangle nonprofit).

In Colorado, small businesses that received USAID grants and contracts to evaluate the effectiveness of life-saving food programs lost funds and had to lay off employees. *See* Elizabeth Hernandez, *USAID gutting hits Colorado as organizations, small businesses struggle to survive*, Denver Post (Feb. 14, 2025), tinyurl.com/y8xv93n6. These layoffs increase the burden on state unemployment benefit programs and reduce state income and tax revenues. *See Maryland v. U.S. Dep't of Agric.*, No. 1:25-cv-748, 2025 WL 973159, at *6-8 (D. Md. Apr. 1, 2025).

Additionally, the refusal to spend appropriated funds has affected farmers who sell crops to USAID for distribution as international food aid—it puts downward pressure on the market for affected crops. *See* Tom Crann & Gretchen Brown, *USAID cuts will impact Minnesota farmers*, MPR News (Feb. 27, 2025), tinyurl.com/bdffj3yp. Farmers in Minnesota, Wisconsin, and Iowa stand to lose up to $2 billion annually. *See* Christopher Vondracek, *Shuttering of USAID could mean the end of millions in income for Midwest farm operations,* Minn. Star Tribune (Feb. 6, 2025), tinyurl.com/mr29c59r.

These many harms in the Amici States support the district court's conclusion that, in addition to Appellees' likelihood of success on the merits, the public interest favors granting a preliminary injunction.

## CONCLUSION

This Court should grant rehearing en banc and affirm the district court's preliminary injunction order.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the
 District of Columbia

EMMA P. SIMSON
Senior Counsel to the
 Attorney General

ELIZA SIMON
Senior Counsel to the
 Attorney General

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE
Bar Number 1017942
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

TESSA GELLERSON
CARA SPENCER
Assistant Attorneys General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
(202) 741-0649 (fax)
caroline.vanzile@dc.gov

August 2025

13

On behalf of:

KRIS MAYES
*Attorney General of Arizona*

KEITH ELLISON
*Attorney General of Minnesota*

ROB BONTA
*Attorney General of California*

AARON D. FORD
*Attorney General of Nevada*

PHILIP J. WEISER
*Attorney General of Colorado*

MATTHEW J. PLATKIN
*Attorney General of New Jersey*

WILLIAM TONG
*Attorney General of Connecticut*

RAÚL TORREZ
*Attorney General of New Mexico*

KATHLEEN JENNINGS
*Attorney General of Delaware*

LETITIA JAMES
*Attorney General of New York*

ANNE E. LOPEZ
*Attorney General of Hawaii*

JEFF JACKSON
*Attorney General of North Carolina*

KWAME RAOUL
*Attorney General of Illinois*

DAN RAYFIELD
*Attorney General of Oregon*

AARON M. FREY
*Attorney General of Maine*

PETER F. NERONHA
*Attorney General of Rhode Island*

ANTHONY G. BROWN
*Attorney General of Maryland*

CHARITY R. CLARK
*Attorney General of Vermont*

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

NICHOLAS W. BROWN
*Attorney General of Washington*

DANA NESSEL
*Attorney General of Michigan*

JOSHUA L. KAUL
*Attorney General of Wisconsin*

14

## CERTIFICATE OF SERVICE

I certify that on August 19, 2025, this brief was electronically filed with the Clerk of the Court using the CM/ECF system.  I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished using the CM/ECF system.

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 29(a) because the brief contains 2,596 words, excluding exempted parts.  This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE