

**U.S. Department of Justice**

Civil Division, Appellate Staff
950 Pennsylvania Ave. NW, Rm. 7260
Washington, DC 20530

---

Tel: (202) 514-3388

August 22, 2025

VIA CM/ECF

Clifton Cislak, Clerk of Court
U.S. Court of Appeals for the D.C. Circuit
333 Constitution Avenue, NW
Washington, DC 20001

RE:   *Global Health Council v. Trump*;
       *AIDS Vaccine Advocacy Coalition v. Department of State*,
       Nos. 25-5097, 25-5098 (D.C. Cir.)

Dear Mr. Cislak:

     I write regarding the pending cross-motions in the above-captioned cases.  The government has previously explained to the Court that the government requires relief from the preliminary injunction in this case well in advance of September 30, when funds covered by the injunction begin to expire.  The attached declaration provides additional information regarding the specific steps that must be taken in advance of that date if the preliminary injunction remains in effect.  In light of those steps and the associated harms that would befall the government, the Solicitor General intends to seek relief from the Supreme Court after 10 AM on Tuesday, August 26, if the government has not received a decision on the pending cross-motions from this Court before that time.

                                      Sincerely,

                                        */s/ Sean R. Janda*
                                        Sean R. Janda

cc:   Counsel of Record (via CM/ECF)

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Global Health Council, *et al.*,
  Plaintiffs-Appellees,

v.

Donald J. Trump, *et al.*,
  Defendants-Appellants.

———

AIDS Vaccine Advocacy Coalition, *et al.*,
  Plaintiffs-Appellees,

v.

United States Department of State, *et al.*,
  Defendants-Appellants.

Nos. 25-5097, 25-5098

**DECLARATION OF JEREMY LEWIN**

I, Jeremy Lewin, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. This declaration is based on my personal knowledge and information provided to me in my official capacity by others.

2. I am currently serving as the Under Secretary of State for Foreign Assistance, Humanitarian Affairs, and Religious Freedom (F), the Director of Foreign Assistance and a Senior Advisor to the Secretary of State. I am also performing the duties and functions of Deputy Administrator and Chief

Operating Officer of the United States Agency for International Development (USAID). I have served as a policymaker at the Department of State and USAID since shortly after President Trump's inauguration in January 2025.

3. In my current roles, I oversee the management of foreign assistance resources appropriated to the Department of State and USAID, assist the Secretary in exercising his duties delegated under the Foreign Assistance Act, serve as the senior-most official and advisor to the Secretary on foreign assistance, democracy and values-based diplomacy issues around the world, and oversee the bureaus of Democracy, Human Rights and Labor, Populations, Refugees and Migration, Global Health Security and Diplomacy and the offices of Foreign Assistance Oversight and Global Food Security.

4. I submit this declaration in support of Defendants' request that the Court act as soon as possible, and no later than 10 AM on Tuesday, August 26, on the parties' competing pending motions to stay the preliminary injunction and/or immediately issue the mandate, or to grant rehearing en banc.

5. I understand that, notwithstanding the panel opinion that found reversible error in the preliminary injunction and ordered that it be vacated, that injunction remains in force because the mandate has not yet issued and a rehearing petition is pending. But that uncertainty puts State and USAID in an untenable position. For the reasons further described below, compliance with

the preliminary injunction will require the government imminently to take actions that would not be reversible without causing severe irreparable harm to the United States and to its foreign policy. That is why Defendants asked this Court to expedite the appeals and issue a ruling before August 15. Although the Court did so, the current state of limbo threatens to defeat the purpose of the expedition.

6. More specifically, some of the foreign assistance funds appropriated by Division F of the Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. F, 138 Stat. 460, 729 (FCAA), and implicated by the preliminary injunction remain available only until September 30, 2025. If the injunction remains in force and requires the government to obligate all of those funds, State would have to take a variety of steps before that deadline to ensure compliance before the appropriated funds expire.

7. Working backwards, one of those required steps, which applies to many of the funds at issue, is a notification to Congress of the planned obligation of the funds and details concerning the same. By statute, that notification must be made at least 15 days in advance of the obligation. *See* section 634A of the Foreign Assistance Act of 1961 (FAA); sections 7015(c), 7015(f), 7015(h)(2)(E), 7046(d)(3)(D), and 7058(a) of FY 2024 SFOAA. During this period, the Department generally briefs Members of Congress on proposed

programming and foreign policy and budgetary implications, and sometimes modifies planned programs or obligations based on Congressional feedback.

8. Furthermore, before congressional notification, State must decide the terms and parameters of the obligation, and the mechanism through which the funds will flow (grants, contracts, etc).

9. Because the funds at issue are for foreign assistance, the recipients of those awards would include foreign states, instrumentalities, and international organizations. For example, the funds at issue are often obligated onto bilateral agreements between the United States and a foreign state, including Cooperative Agreements, Development Objectives Agreements, similar instruments. Depending on the terms of these agreements, obligations, sub-obligations and modifications often require the active agreement of the foreign state. Thus, obligations often require direct negotiation with foreign states or international organizations.

10. Even when awards do not require direct bilateral diplomatic engagement, the Department generally consults with foreign states to ensure diplomatic alignment with the United States' foreign policy interests, and those of the relevant foreign states or international organizations.

11. For the foreign assistance funds at issue—which would be obligated to programs in dozens of countries around the world—bilateral

diplomatic engagement negotiation would likely to consume approximately two weeks, even when expedited.

12. By virtue of those final two steps alone, the relevant deadline is not September 30, but effectively September 2 (the day after Labor Day) at the very latest.

13. Of course, there is also planning that must occur before those final steps; that work has been underway for some time, because Defendants did not know whether the panel would affirm or vacate the injunction, and it will continue over the next week.

14. Unlike planning work, however, negotiation with foreign actors and congressional notification are close to irrevocable. Most critically, it would cause immense irreparable harm to the foreign policy of the United States to enter into negotiations to award a large sum of money to a foreign state or international organization, let alone to announce it to Congress, only to renege at the last moment if this Court or the Supreme Court grants a stay of the injunction. Those steps would damage both diplomatic and inter-branch relations, making it virtually impossible for Defendants to backtrack after starting down this road. That is why it is critical to have legal clarity on the status of the injunction—including from the Supreme Court, if necessary—by September 2.

I declare that the foregoing is true and correct to the best of my knowledge.

Dated: August 22, 2025

                                                    Jeremy Lewin